UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------------X

THE DELAWARE RIVERKEEPER, a.k.a.
MAYA K. VAN ROSSUM AND
DELAWARE RIVERKEEPER NETWORK,

                Plaintiffs,

          v.

THE PHILADELPHIA GUN CLUB,

                Defendant.

---------------------------------------------------------------X

:   Civil Case No.: 2:12-cv-01602-JS

:   **AMENDED COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF AND CIVIL
PENALTIES**

:   (Pursuant to the Federal Water Pollution
Control Act, 33 U.S.C. § 1251, *et. seq.*)

## AMENDED COMPLAINT[1]

The Delaware Riverkeeper, a.k.a. Maya K. van Rossum, and Delaware Riverkeeper Network (together "Plaintiffs"), by and through their counsel, hereby state and allege as follows:

### INTRODUCTION

1.    This is an Amended Complaint for injunctive and declaratory relief and civil penalties under the Federal Water Pollution Control Act, more commonly referred to as the Clean Water Act, 33 U.S.C. § 1251, *et seq.* Plaintiffs bring this citizen suit under Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), against the Philadelphia Gun Club ("PGC" or "Defendant"), for past and continuing violations of the Clean Water Act. Defendant is a gun

---

[1] Plaintiffs amend their complaint as of right pursuant to Fed. R. Civ. P. 15(a) which entitles a "party to amend its pleading once as a matter of course within:... (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under 12(b), (e), or (f), whichever is earlier." Plaintiffs file this Amended Complaint within 21 days of Defendant's Rule 12(b)(1) motion to dismiss, exclusive of the date of filing. Plaintiffs file this amended complaint to make more specific factual allegations regarding the injury that Defendant's unlawful actions have caused and are causing to Plaintiffs. In doing so, Plaintiffs do not concede that their initial complaint was defective.

club that holds live pigeon and other recreational shoots over the Delaware River. During the course of these shoots, Defendant discharges and allows the discharge of pollutants into the Delaware River in violation of federal and state environmental laws. Defendant's discharges are impairing water quality in the Delaware River and are interfering with Plaintiffs' ability to enjoy the Delaware River. Defendant's violations are ongoing as of the date of the Complaint.

2.     Plaintiffs seek declaratory and injunctive relief and the imposition of civil penalties resulting from Defendant's violations. Plaintiffs also seek an award of costs, attorney's fees and expert witness fees pursuant to 33 U.S.C. § 1365(d).

## JURISDICTION AND VENUE

3.     Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction).

4.     As required by Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b), on October 26, 2010, Plaintiffs sent a sixty-day notice of intent to sue for violations of the Clean Water Act. On August 9, 2011, Plaintiffs sent a supplemental sixty-day notice of intent to sue for violations of the Clean Water Act. More than sixty days have passed since Plaintiffs sent their supplemental notice of intent to sue. Defendant has not remedied the violations alleged in the Amended Complaint and Defendant's violations as alleged in the Amended Complaint will continue.

5.     Neither the United States Environmental Protection Agency (the "EPA") nor the Pennsylvania Department of Environmental Protection (the "DEP") has commenced an administrative or court action to redress the Clean Water Act violations alleged herein. Accordingly, Plaintiffs' claims are not barred by Section 505(b)(1)(B) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(B).

6.     Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1) because the source of the violations described herein is located within this judicial district.

## PARTIES

7.     Defendant the Philadelphia Gun Club is a Pennsylvania corporation.  Defendant owns property adjoining the Delaware River at 3051 State Road, Bensalem, Pennsylvania 19020, and operates an outdoor shooting range on this property for its members.  Defendant is also a tax-exempt social club pursuant to the Internal Revenue Code § 501(c)(7).  Defendant's sole tax exempt purpose according to its federal tax returns is to hold trap shoot meets throughout each and every fiscal year.

8.     Plaintiff the Delaware Riverkeeper, a.k.a. Maya K. van Rossum, is a full-time privately funded ombudsman who is responsible for the protection of the waterways in the Delaware River Watershed.  The Delaware Riverkeeper advocates for the protection and restoration of the ecological, recreational, commercial and aesthetic qualities of the Delaware River, its tributaries and habitats.  The Delaware Riverkeeper's duties include, but are not limited to, overseeing the operations of the Delaware Riverkeeper Network.

9.     Plaintiff Delaware Riverkeeper Network ("DRN") is a tax-exempt organization pursuant to the Internal Revenue Code § 501(c)(3), and a not-for-profit membership organization based in Bristol, Pennsylvania.  Delaware Riverkeeper Network and its more than 7,700 members, many of whom live, work and recreate in Pennsylvania and New Jersey, including near Defendant's property, are dedicated to protecting and restoring the ecological, recreational, commercial and aesthetic qualities of the Delaware River, its tributaries and habitats.

10.     The Delaware Riverkeeper and DRN's members use and enjoy the Delaware River, its tributaries and habitats for recreational, scientific and aesthetic purposes, including canoeing,

3

kayaking, sightseeing, bird watching and/or wildlife viewing at the reach of river upon which Defendant's property fronts. The Delaware Riverkeeper and DRN's members also use the Delaware River, including the areas upon which Defendant's property fronts, to engage in scientific study and pollution and habitat monitoring activities. Defendant's discharge of pollutants into the Delaware River impairs the Delaware Riverkeeper's and DRN's members' uses and enjoyment of the Delaware River for these and other purposes.

11.     Specifically, a fundamental element of Ms. van Rossum's work as the Delaware Riverkeeper, and of the Delaware Riverkeeper Network, is to patrol the waterways of the Delaware River watershed, including the reach of river upon which Defendant's property fronts, by motorized boat owned by the Delaware Riverkeeper Network for this purpose. For approximately 19 years, Ms. van Rossum has regularly patrolled the stretch of the Delaware River between the "Trenton-Makes" Bridge and the Commodore Barry Bridge, which includes the area of river upon which Defendant's property fronts. Ms. van Rossum has undertaken these patrols two to six times a year and she intends to continue these patrols into the foreseeable future.

12.     During these patrols, Ms. van Rossum has enjoyed the aesthetic beauty of the Delaware River, including at the area of the river upon which Defendant's property fronts and immediately downstream of the Defendant's property. In these areas, Ms. van Rossum has also enjoyed the water quality, fish life, bird life, and wildlife that are dependent on a healthy river ecosystem.

13.     Since Ms. van Rossum has become aware of Defendant's activities and the pollution as well as the safety threats posed by unregulated gun shoots, her aesthetic interests have been greatly diminished at the reach of river upon which Defendant's property fronts and immediately downstream of Defendant's property. Now that Ms. van Rossum is aware of Defendant's

discharge of pollution, when Ms. van Rossum observes wildlife during a patrol at the reach of river upon which Defendant's property fronts she has a concern for the detrimental effect of the pollution on the birds, fish, and other wildlife in the ecosystem in this area, and this concern, along with her knowledge of the presence of pollutants unlawfully discharged by Defendant, greatly diminishes her aesthetic and recreational enjoyment in this area.

14.     Ms. van Rossum has also taken out members and other interested people onto the Delaware River to educate them about the river and to share the river's aesthetic beauty with them. On these outreach trips Ms. van Rossum and her company travel to, among other places, the area of the river upon which Defendant's property fronts. Since Ms. van Rossum has become aware of the Defendant's illegal discharges, she no longer invites people on these outreach trips when there is a potential likelihood of a gun shoot at Defendant's property or she avoids this area of the river. Thus, she herself is less likely to use and/or enjoy the reach of the Delaware River upon which Defendant's property fronts because of her safety concerns and her concerns about the environmental degradation of Defendant's illegal discharges. As a result, her aesthetic and recreational interests in using and enjoying the reach of the River upon which Defendant's property fronts are diminished and her outreach attempts to further the Delaware Riverkeeper Network's organizational goals are infringed upon. Ms. van Rossum intends to continue these outreach trips into the foreseeable future.

15.     Ms. van Rossum's family, including her husband and her children, have joined her during patrols, including patrols at the reach of river upon which Defendant's property fronts. Ms. van Rossum believes that her family's presence on the boat is necessary to send a strong message to the community that the Delaware River is an aesthetic and recreational resource that should be enjoyed by the whole family and the community.

5

16.     Since Ms. van Rossum has become aware of Defendant's activities and its unlawful pollution as well as the safety threat that shooting over the river creates, Ms. van Rossum no longer brings her children along on patrols when there is a potential likelihood of a gun shoot at Defendant's property. She herself is less likely to use and/or enjoy the reach of the Delaware River upon which Defendant's property fronts because of her safety concerns and her concerns about the environmental degradation of Defendant's illegal discharges. As a result, her aesthetic and recreational interests in using and enjoying the reach of the River upon which Defendant's property fronts are diminished and her attempts to further the Delaware Riverkeeper Network's organizational goals are infringed upon.

17.     In addition, because Defendant operates its shooting range without the requisite permit under the Clean Water Act, Defendant has failed to satisfy the monitoring, reporting and recordkeeping requirements that provide information to the Delaware Riverkeeper, DRN and its members about the types and quantities of pollutants being discharged into the Delaware River. Thus, Plaintiffs are reasonably concerned that pollutants discharged by Defendant exceed levels allowed by law and protective of human health and the environment.

18.     Defendant's violations of the Clean Water Act have injured and continue to injure the health, recreational, scientific, environmental, and aesthetic interests of Plaintiffs.  These injuries are fairly traceable to Defendant's conduct and capable of redress by action of the Court. Plaintiffs have no adequate remedy at law.

## LEGAL BACKGROUND

### Clean Water Act

19.     Congress enacted the Clean Water Act in 1972 to "restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).  The function of

the Clean Water Act is to ensure "water quality which provides for the protection and

propagation of fish, shellfish and wildlife and provides for recreation in and on the water." 33

U.S.C. § 1251(a)(2).

20.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), provides that "the discharge

of any pollutant . . . shall be unlawful" unless, in pertinent part, the discharge is made pursuant to

and is authorized by a National Pollution Discharge Elimination System ("NPDES") permit, as

provided by Section 402 of the Act, 33 U.S.C. § 1342.  "Discharge of pollutant" means any

"addition of a pollutant to navigable waters from any point source." 33 U.S.C. § 1362(2).

Pollutant is broadly defined under the Clean Water Act to include " . . . solid waste . . . garbage .

. . munitions . . . [and] biological materials . . . discharged into water." 33 U.S.C. § 1362(6).

The term "point source" includes "any discernible, confined, and discrete conveyance . . . from

which pollutants are or may be discharged" and "navigable waters" are defined as "the waters of

the United States." 33 U.S.C. §§ 1362(7) and (14).

21.     Although the EPA is the primary administrator of the Clean Water Act, Section 402 of

the Clean Water Act authorizes the EPA to delegate its authority to states to implement and

administer the NPDES program.  33 U.S.C. § 1342(b); 40 C.F.R. § 122.4(d).  The DEP is

authorized to issue NPDES permits, and has incorporated the federal standard of issuing a permit

only when the conditions imposed can ensure "compliance with the applicable water quality

requirements of all affected states." 25 Pa.Code § 92a.5(a).  *See also* 33 U.S.C. § 1342(b); 40

C.F.R. § 122.4(d).

**Citizen Enforcement of the Clean Water Act**

22.     Clean Water Act violators are subject to enforcement actions initiated by the EPA, states

and citizens.  33 U.S.C. §§ 1319, 1365(a).  Citizens are required to provide sixty days' notice of

any alleged violations prior to commencing suit. 33 U.S.C. § 1365(b). After sixty days have passed, citizens may bring an action in federal district court to enforce against any ongoing violations of the Clean Water Act.

23.     Section 505 of the Clean Water Act authorizes citizens to bring suit against any person, including a corporation, who is alleged to be in violation of an "effluent standard or limitation" under the Clean Water Act. 33 U.S.C. § 1365(a). "Effluent standard or limitation" is broadly defined to include "any unlawful act under subsection (a) of [section 301] of this title." 33 U.S.C. § 1365(f).

24.     Section 309 of the Clean Water Act, 33 U.S.C. § 1319(d), adjusted by 40 C.F.R. § 19.4, provides for civil penalties of up to $37,500 per day per violation. Violations occurring before January 12, 2009 carry penalties of up to $32,500 per day of violation.

## FACTS

25.     Defendant operates an outdoor shooting range on its property adjoining the Delaware River. Defendant's members have used the outdoor range for recreational target shooting for approximately 132 years. Upon information and belief, Defendant also hosts at least twelve regular, day-long trap shoot meets for its members each and every year. However, the dates of these meets are not publicized in such a way as to inform the general public of when the reach of the River upon which Defendant's property fronts might be hazardous to boaters. Unlike other gun clubs, Defendant uses live pigeons at its trap shoot meets for target practice instead of clay ones. Trap shoot meets like these are more commonly referred to as live pigeon shoots.

26.     Over the course of a typical live pigeon shoot hosted by Defendant, hundreds to thousands of live birds are stuffed into steel traps, launched into the air and shot at for target

practice. Wounded and dead birds end up on the PGC's grounds, in the Delaware River, and on the shoreline of the Delaware River.

27.     Because of the configuration of Defendant's shooting range and the layout of its property, all shooting on the outdoor range occurs over and in the direction of the Delaware River. This results in the continuous discharge by Defendant and its members of shot and shot fragments composed of lead, bismuth, tungsten, copper, steel and other metals and materials into the Delaware River. In addition, the shooting activities of Defendant and its members also result in the discharge of dead pigeons, pigeon carcasses, and pigeon fragments into the Delaware River.

28.     Defendant's shooting activities are also hazardous to the physical safety of those who boat and recreate on the Delaware River due to the danger of injury from falling shot. In or around February 2010, Defendant submitted a series of applications to the United States Coast Guard to request a "safety exclusion area offshore" of its shooting range. Defendant represented that such a safety area was necessary in order to "exclude small craft" from the Delaware River adjoining its shooting range "for safety reason[s]." Defendant explicitly acknowledged that while its shooting range is in operation there is the "danger of personal injury" to boaters and others from "falling shot *offshore out to 100 yards*." (Emphasis added). Defendant subsequently withdrew its applications but continues to shoot over and into the Delaware River.

29.     Despite discharging shot, pigeon carcasses and other pollutants into the Delaware River, Defendant has not obtained an NPDES permit.

## CLAIM FOR RELIEF
(Violations of the Clean Water Act)

30.     Plaintiffs repeat and incorporate by reference the allegations set forth in paragraphs 1 through 29 above.

31.     Defendant is a "person" within the meaning of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and is subject to suit under the Clean Water Act citizen suit provision, 33 U.S.C. § 1365.

32.     The Delaware River is a "water[] of the United States" as defined by 40 C.F.R. § 122.2.

33.     The shot and shot fragments composed of lead, bismuth, tungsten, copper, steel and other metals and materials discharged by Defendant are "pollutants" as defined by 33 U.S.C. § 1362(6).  *See also Long Island Soundkeeper Fund, Inc. v. New York Coastal Fishermen's Ass'n*, 1996 U.S. Dist. LEXIS 3383, at *45-46 (S.D.N.Y. Mar. 22, 1996).  Likewise, dead pigeons, pigeon carcasses, and pigeon fragments discharged by Defendants are also "pollutants" as defined by 33 U.S.C. § 1362(6).

34.     Defendant's shooting range, firing line and/or firing stations, and steel traps are "point sources" as defined by 33 U.S.C. § 1362(14).

35.     Since 1972, Defendant has discharged and allowed the discharge of pollutants from multiple point sources into the waters of the United States on a continual and continuing basis without an NPDES permit.

36.     By discharging and allowing the discharge of pollutants into the waters of the United States without an NPDES permit, Defendant is in violation of 33 U.S.C. § 1311(a).

37.     Defendant's violations of the Clean Water Act are ongoing.  Given the number of years that Defendant has engaged in activities that violate the Clean Water Act, and because Defendant's only tax-exempt purpose is to hold trap shoot meets for its members, there is more than a reasonable likelihood of additional ongoing violations in the future unless and until Defendant is enjoined by the Court.

38.     By committing the acts alleged above, Defendant is subject to an assessment of civil penalties pursuant to 33 U.S.C. §§ 1319(d) and 1365(a).  In addition, Plaintiffs are entitled to an award of litigation costs and attorney's fees under 33 U.S.C. § 1365(d).

39.     Plaintiffs seek injunctive relief pursuant to 33 U.S.C. § 1365(a).  The continuing commission of the acts alleged above will irreparably harm Plaintiffs, for which harm there is no plain, speedy or adequate remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request relief as follows:

40.     A declaration that Defendant has violated and continues to violate Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants into the Delaware River without an NPDES permit;

41.     An order enjoining Defendant from operating its shooting range except in accordance with an NPDES permit and the Clean Water Act;

42.     An order requiring Defendant to remediate any environmental damage and ongoing impacts resulting from its illegal discharges into the Delaware River;

43.     An order imposing civil penalties against Defendant for its violations of the Clean Water Act in the amount of $32,500 per violation, per day for violations occurring before January 19, 2009, and $37,500 per violation, per day occurring thereafter;

44.     An award of Plaintiffs' litigation costs (including attorney and expert witness fees and other costs) pursuant to 33 U.S.C. § 1365(d);

45.     All other relief the Court deems just and reasonable.

DATED this 10th of July, 2012

Elizabeth Koniers Brown, PAB No. 94052
Nicholas B. Patton, *Pro Hac Vice*
Delaware Riverkeeper Network
925 Canal Street, Suite 3701
Bristol, PA 19007
Ph.  (215) 369-1188 x 108
Fx.  (215) 369-1181
Elizabeth@delawareriverkeeper.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true and correct copy of the foregoing Amended

Complaint was served by first class mail on the following attorneys at the following addresses:

John P. Judge, Esquire
PA Bar. No. 44324
Christina M. Kaba, Esquire
PA Bar No. 311485
1000 Westlakes Drive, Suite 150
Berwyn, PA 19312

*Attorneys for Defendant*

Sean M. Corr, Esquire
PA Bar No. 58895
Eastbury & Gray, P.C.
60 East Court Street
P.O. Box 1389
Doylestown, PA 18901

*Of Counsel for Defendant*

I certify that the foregoing statements made by me are true. I am aware that if any of the

foregoing statements made by me are willfully false, I am subject to punishment.

Dated: July 10, 2012

by: _____

Nicholas B. Patton, *Pro Hac Vice*
Elizabeth Koniers Brown, PAB No. 94052
Delaware Riverkeeper Network
925 Canal Street, Suite 3701
Bristol, PA 19007
Ph. (215) 369-1188 x 108
Fx. (215) 369-1181
Elizabeth@delawareriverkeeper.org

*Attorneys for Plaintiffs*